Luis Illanas Blanco, demandante y apelado, *v.* Cecilio González González, demandado y apelante.

Núm. 7192.—*Sometido:* Junio 4, 1937. *Resuelto:* Junio 24, 1937.

*Francisco A. González Suárez,* abogado del apelante; *José Veray, Jr.,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Los hechos esenciales de este caso son como siguen:

El demandante es dueño de un solar de 99.20 metros cuadrados, en el que existe una casa designada con el núm. 23 de la calle Stahl, en la ciudad de Aguadilla. Dicho solar colinda por el Norte con otro de 99.36 metros cuadrados, pro-

piedad del demandado, en el que radica una casa de concreto, la cual era originalmente de un sola planta. El solar del demandado fué segregado de un finca de 4,719.80 metros cuadrados, que adquirió el demandante por herencia de doña Julia Blanco Valentín, y vendido por el demandante y su esposa en 21 de julio de 1931 a Víctor Pérez. En la fecha en que Víctor Pérez adquirió dicho solar, éste contenía una casa de madera, techada de hierro galvanizado y marcada con el número 21 de la calle Stahl. Víctor Pérez demolió dicha casa y en su lugar edificó otra de concreto, de una sola planta, la cual vendió junta con el solar, en 17 de febrero de 1933, al demandado. El demandante adquirió la casa que está enclavada en su solar de 99.20 m. c., en 28 de julio de 1933, por compra a Antonio Sosa González y Antonio Sosa Ríos.

La casa de madera que había en el solar del demandado y que fué demolida por Víctor Pérez para construir la de concreto, tenía más de veinte años de construída, y mientras existió tuvo ventanas en su lado sur, colindante con el lado norte de la casa del demandante. La casa de concreto construída por Víctor Pérez y vendida por éste al demandado tiene por su lado sur una pared de concreto, sin ventanas o huecos de clase alguna hacia la finca del demandante. Dueño ya de la referida casa de concreto, el demandado edificó una segunda planta de madera en cuyo lado sur abrió cuatro ventanas con vistas rectas hacia la propiedad del demandante y construyó un alero de cincuenta y tres centímetros de ancho, que cae sobre la propiedad del demandante en una anchura de veintitrés centímetros.

En la demanda se alega que los actos del demandado han sido ejecutados sin la autorización y contra la voluntad del demandante, y se pide sentencia por la que se declare que la finca del demandante no está sujeta a servidumbres de luces y vistas y de desagüe de techo a favor de la finca del demandado; que el demandado debe tapiar las ventanas y recortar el alero del techo de manera que no sobresalga de

la línea de su solar y ponerle canales de desagüe; que se ordene la ejecución de tales obras con cargo al demandado, si éste se negare a realizarlas; y que se condene al demandado al pago de costas, gastos y honorarios de abogado.

El demandado negó los hechos esenciales de la demanda y alegó siete defensas especiales, las cuales pueden resumirse así: Que a principios del 1931, el demandante, dueño de los dos solares envueltos en esta controversia, vendió a Víctor Pérez el solar que es hoy propiedad del demandado y en el cual radicaba una casa de madera que tenía más de 25 años de edificada; que dicha casa tenía varias puertas y ventanas en el lado sur que colinda con la casa del demandante, la cual a su vez tiene también ventanas en el lado que colinda con la casa del demandado; que al vender dicha propiedad, el demandante ni prohibió la continuación de la servidumbre de luces y vistas existente a favor de la casa vendida, ni se reservó derecho alguno de servidumbre de luces y vistas a favor de su propiedad, quedando así establecidas servidumbres recíprocas desde hace más de veinte años; que jamás se contruyó pared, cerca o separación material entre ambas propiedades; que las servidumbres de luces, vistas y desagüe han existido a favor de la finca del demandado por más de 25 años, lo que da al demandado el derecho por prescripción para continuar gozando de ellas; y que el demandante tuvo conocimiento y presenció la construcción de las ventanas y alero y no hizo protesta alguna.

Celebrada la vista del caso, la Corte de Distrito de Aguadilla dictó sentencia por la que se ordena al demandado que tapie las ventanas y reduzca el alero, dentro del plazo de treinta días desde que la sentencia sea firme; se autoriza al demandante para que realice tales obras por cuenta del demandado, en caso de que éste se negare a hacerlo; y se condena al demandado al pago de costas, gastos y honorarios. El demandado apeló.

En el primer señalamiento se alega que la corte erró al declarar sin lugar la excepción previa sobre insuficiencia de

los hechos alegados en la demanda. Los argumentos aducidos para sostener este señalamiento son enteramente frívolos. La demanda contiene todas las alegaciones necesarias para establecer una causa de acción a favor del demandante. La corte procedió correctamente al desestimar la excepción.

El segundo señalamiento imputa a la corte inferior el error de haber permitido al demandante declarar sobre la cabida del solar del demandado, siendo la mejor prueba la escritura de la propiedad en la que consta su cabida. Creemos innecesario discutir este señalamiento. Aún cuando la corte hubiese errado al admitir la declaración del demandante, el error en nada perjudicó los derechos del demandado, y además, el mismo fué subsanado posteriormente al presentarse la prueba documental pertinente.

En el tercero se señala como error de la corte el de no haber admitido en evidencia cuatro pequeñas fotografías ofrecidas por el demandado. Dichas fotografías fueron exhibidas en el acto del juicio al fotógrafo Sr. Silva, testigo del demandante, quien después de examinarlas declaró que eran fotografías de las dos propiedades envueltas en este litigio. La Corte se negó a admitirlas por entender que de acuerdo con la jurisprudencia una fotografía no es admisible en evidencia si no ha sido identificada antes por la misma persona que la tomó. Convenimos con el apelante en que no es absolutamente necesario que las fotografías sean identificadas por la misma persona que las tomó. Si se demuestra por evidencia extrínseca que la fotografía es una representación fiel y exacta de la propiedad, tal como ésta existía en la fecha de la controversia, es el deber de la corte admitirla como prueba. La fotografía puede ser identificada por la declaración del fotógrafo que la tomara o por el testimonio de otras personas que estén familiarizadas con la propiedad. Véanse: 22 C. J., secciones 1114 a 1125; Wigmore on Evidence, sección 794; Jones, 3 Commentaries on the Law of Evidence in Civil Cases, 757. Las ofrecidas en este caso fueron suficientemente identificadas por el fotógrafo

Silva, quien tomó la fotografía de las propiedades que fué ofrecida por el demandante y admitida como *exhibit* C de dicha parte. Si la corte cometió error al no admitirlas, ese error no pudo en manera alguna perjudicar al demandado, pues la jurisprudencia sostiene que cuando una inspección ocular de la propiedad es posible y practicable, la corte puede excluir fotografías, por ser éstas evidencia secundaria. Véanse: *Wyldes* v. *Patterson*, 153 N. W. 630, y *Dobson* v. *Philadelphia*, 7 Pa. Dist. 321. Tanto la fotografía admitida como las rechazadas fueron ofrecidas para ilustrar a la corte en cuanto a la dimensión y condiciones del alero construído por el demandado. La corte basó su sentencia en sus propias observaciones durante la inspección ocular por ella practicada a instancia de ambas partes, sin tener en cuenta las fotografías. Y usando sus propios sentidos y una cinta métrica, la corte comprobó que el callejón que separa una casa de la otra mide solamente 83½ centímetros, y llegó a la conclusión de que el alero está construído en forma tal que las aguas pluviales no solamente se vierten sobre el predio del demandante sino también sobre el techo de la casa de éste. El error no pudo perjudicar al demandado y debe ser desestimado.

Las imputaciones que hace el apelante en su alegato, de que la corte al apreciar la prueba actuó movida por pasión, prejuicio y parcialidad no aparecen justificadas en manera alguna. No aparece del récord conflicto alguno en cuanto a los hechos esenciales de la controversia.

■■ Veamos ahora si la corte erró al aplicar la ley a los hechos establecidos por la prueba.

En su relación del caso y opinión la corte inferior llegó a la siguiente conclusión:

"De las pruebas practicadas, así como de la ley aplicable y de las doctrinas relativas a las mismas, es fuerza concluir que el demandado tenía y sigue teniendo derecho a la servidumbre de luces y vistas de las ventanas abiertas en la planta baja de la casa de madera que fué demolida para construir otra de cemento; que tales ventanas

para luces y vistas no eran removibles para ser establecidas en otra planta como ha pretendido y llevado a cabo el demandado al construir una planta alta sobre la anterior, practicando los huecos y ventanas que correspondían a la planta inferior. . .

"No hay duda que dentro del proceso de distintas adquisiciones porque ha pasado el solar y las casas construídas en el mismo desde el momento que la planta baja mantuvo por un tiempo indefinido los huecos o ventanas de que se ha hecho mención abiertos hacia el fundo vecino perteneciente al mismo dueño, la servidumbre de luces y vistas fué adquirida a favor de ese edificio; pero no es menos cierto que por la teoría de la inherencia, estos huecos o ventanas no pueden ser practicados en otro sitio a capricho de la persona dueña del edificio a favor del cual la servidumbre de luces y vistas quedaba establecida y menos trasladando estos huecos o ventanas para luces y vistas a una planta de nueva edificación."

Las dos fincas envueltas en este litigio pertenecieron hasta el 13 de abril de 1928, fecha de su fallecimiento, a doña Eustaquia Ríos Hidalgo. Aun cuando para la existencia de una servidumbre es requisito indispensable que el predio dominante y el predio sirviente pertenezcan a distintos dueños, la servidumbre existía virtualmente a favor de cada uno de los dos predios y sobre el otro, por ser un hecho probado que la casa de madera que existía sobre el solar que es hoy del demandado tenía ventanas abiertas con vistas hacia el solar del demandante y viceversa. Esas ventanas, signos aparentes de servidumbre de luces y vistas, habían sido establecidas o reconocidas por la dueña de ambas propiedades. Mientras los dos predios pertenecieron a un solo dueño, la servidumbre existía como un derecho o gravamen latente. Y al separarse la propiedad de los dos predios, pasando uno a ser propiedad del demandante y el otro del demandado, la servidumbre revivió en beneficio de cada uno de los predios y en contra del otro, como obligaciones recíprocas de permitir vistas y de dar luz a las edificaciones que pudieran existir sobre uno u otro predio. El artículo 477 del Código Civil (ed. 1930), que consideramos aplicable, dice:

"Artículo 477.—La existencia de un signo aparente de servidumbre entre dos fincas establecido por el propietario de ambas, se con-

siderará, si se enajenare una, como título para que la servidumbre
continúe activa y pasivamente; a no ser que, al tiempo de separarse
la propiedad de las dos fincas, se exprese lo contrario en el título de
enajenación de cualquiera de ellas, o se haga desaparecer aquel signo
antes del otorgamiento de la escritura.''

Hemos examinado la escritura de partición de los bienes
de doña Eustaquia Ríos Hidalgo, por la cual se adjudicó al
demandante el solar y casa que aún posee y también el solar
que es hoy propiedad del demandado, adjudicándose a los
dos herederos, Antonio Sosa González y Antonio Sosa Ríos,
entre otros bienes, la casa de madera que existía en el solar
propiedad hoy del demandado; la escritura por la cual los
citados herederos vendieron dicha casa al demandante; la
escritura por la cual el demandante Illanas y su esposa ven-
dieron a Víctor Pérez el solar de 99.36 metros cuadrados y
la casa en el mismo enclavada, núm. 21 de la calle Stahl;
y por último, la escritura de 17 de febrero de 1933, por la
cual el citado Víctor Pérez y Cruz y su esposa vendieron di-
cha casa y solar al aquí demandado Cecilio González. En
ninguna de dichas escrituras hemos podido encontrar cláu-
sula o estipulación alguna que revele la voluntad o el deseo
de las partes contratantes de poner fin a la servidumbre de
luces y vistas existente entre ambos predios y de la cual
eran signos aparentes las ventanas abiertas en las dos edi-
ficaciones existentes en uno y otro solar. Y como la prueba
testifical demuestra que al enajenar la propiedad que es hoy
del demandado, el demandante no realizó acto alguno para
hacer desaparecer aquellos signos aparentes de servidumbre,
tenemos que convenir con la corte sentenciadora en que el
demandado, como sucesor en título de Víctor Pérez, adqui-
rió el derecho a continuar disfrutando de la servidumbre ya
establecida por la dueña primitiva a favor de su predio.

Fáltanos resolver ahora si ese derecho a luces y vis-
tas sobre el predio del demandante puede hacerse extensivo
a una segunda planta construída sobre la planta baja ya

existente sobre el predio dominante, propiedad del demandado.

La servidumbre es un gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño. Se denomina real o predial cuando la disfruta el propietario de un finca y está constituída sobre otra propiedad vecina para beneficio de aquélla. Artículos 465 y 467 del Código Civil (1930). La servidumbre real es inseparable de la finca a que activa o pasivamente pertenece. Artículo 470 del mismo código.

El artículo 518 del Código Civil dispone que "no se puede abrir ventanas con vistas rectas, ni balcones u otros voladizos semejantes, sobre la finca del vecino, si no hay dos metros de distancia entre la pared en que se construyan y dicha propiedad." Pero es indiscutible que el derecho a abrir y a mantener abiertas esa clase de ventanas, cuando la distancia es menor de dos metros, puede ser establecido por la voluntad de los propietarios. (Artículos 472 y 530, Código Civil, 1930.) La evidencia en el caso de autos demuestra fuera de toda duda que el derecho del demandado a abrir ventanas con vistas rectas hacia el predio del demandante quedó establecido por el acto voluntario de éste al vender a Víctor Pérez el solar que es hoy propiedad del demandado y la casa que en el mismo existía sin hacer reserva alguna en la escritura de traspaso u ordenar la clausura de las ventanas antes de vender la propiedad, según lo requiere el ya citado artículo 477.

La servidumbre de luces y vistas es un derecho real establecido sobre un predio, finca o heredad, denominado predio sirviente, para beneficio de otro que se denomina predio dominante. Ese derecho es inherente al predio dominante, es inseparable de éste y no se extingue por la destrucción de las edificaciones existentes sobre el predio y que fueren necesarias para el goce y disfrute de la servidumbre. La corte inferior así lo ha creído, pues no de otro modo se explica que haya declarado "que el demandado tenía y sigue teniendo derecho a la servidumbre de vistas y luces de las ven-

tanas abiertas en la planta baja de la casa de madera que fué demolida para construir otra de cemento.'' Si la servi-dumbre de luces y vistas fuese un derecho inherente a la edificación adherida al predio, ese derecho seguramente desaparecería al ser demolida la edificación. Y si puede reclamarse el mismo derecho en beneficio de una nueva edificación es porque la servidumbre se ha establecido en beneficio del solar o predio dominante, para que cualquiera edificación que en el mismo se erija pueda gozar del beneficio de tener luces y vistas sobre el predio vecino, aun cuando la pared en que se abran las ventanas diste menos de dos metros de la finca del vecino.

Reconocido por la corte inferior y admitido por el demandante el derecho del demandado a la servidumbre de luces y vistas en la planta baja de la casa de éste, debemos resolver ahora si la sentencia recurrida, en cuanto decreta la clausura de las ventanas abiertas en la planta alta de la casa del demandado, es o no contraria a derecho.

Al transmitir a Víctor Pérez el dominio del predio dominante, hoy del demandado, el demandante, quien se reservaba para sí el predio sirviente contiguo, no hizo declaración alguna en cuanto a la no existencia de servidumbre de luces y vistas a favor del predio que transmitía, ni hizo desaparecer los signos aparentes de servidumbre que existían sobre dicho predio, ni definió o limitó en forma alguna el alcance de la servidumbre ni los medios de que podría valerse el nuevo dueño del terreno para el goce y disfrute del derecho que adquiría a tenor de las disposiciones del artículo 477 del Código Civil, supra. En sus comentarios sobre el artículo 541, que es el equivalente del Código Civil Español, dice Scaevola:

''. . . La manifestación de la no existencia de la servidumbre ha de hacerse en el título de enajenación de cualquiera de las fincas, como dice el artículo, esto es, sea la que haya de convertirse en dominante o sirviente, único sentido en el que pueden aceptarse tales palabras; pero en la que se enajene primeramente. Desde este mo-

mento se crea un estado de derecho que no hay más remedio que respetar, sin que pueda ser alterado con posterioridad, a no mediar el consentimiento de los interesados.

"La declaración ha de ser explícita; no debe dejar dudas acerca de la no existencia de la servidumbre. Es decir, deberá expresarse esto específicamente, no bastando la declaración genérica de que se trasmite la finca sin carga alguna o sin ninguna clase de servidumbres, tanto porque esta declaración cabría aplicarla a las servidumbres que pudieran existir entre la totalidad de la finca, entre la unidad jurídica determinada por el dominio consolidado y otras fincas ajenas a él, como porque el artículo exige implícitamente una declaración particular respecto del signo existente." (Vol. 10, págs. 286 y 287.)

El fin de la servidumbre de luces es recibir luz y aire. El demandado adquirió un predio de terreno sobre el que existía una casa que recibía luz y aire del predio vecino, sobre el que tenía vistas rectas. Ni en su título, ni en el que a su antecesor confiriera el demandante, que es dueño del predio sirviente, se impusieron limitaciones a su derecho a continuar recibiendo tales beneficios del predio vecino. Por el contrario, en la escritura de Illanas a Pérez se dice que el primero vende al segundo "la casa y solar segregados que se reseñan en la cláusula precedente, *con cuanto les sea inherente y anexo.*"

De Manresa, Vol. 4, página 649, copiamos lo que sigue:

"Dupret y otros autores sostienen que el que usa de la servidumbre en la medida de sus necesidades o de su conveniencia, la conserva íntegramente aunque no haya hecho todo lo que estaba autorizado a hacer, o aunque lo haya hecho sólo en forma, en sitio determinado. Así, autorizado el paso a pie o en carruaje, aunque durante veinte años sólo se pase a pie, no se pierde por ello el derecho de pasar en carruaje; autorizada la extracción de agua todos los días, aunque sólo se ejercite una, dos o tres veces por semana, no quiere decir esto que se pierda la facultad de tomarla a diario: autorizado el dueño de un edificio para abrir en él cuantas ventanas quiera, el hecho de abrir dos o tres no implica a los veinte años la prohibición de abrir más, etc."

El demandante, al trasmitir el dominio del predio dominante pudo limitar la servidumbre a la planta baja o fijar

el número de ventanas que el adquirente del predio tendría derecho a abrir para poder gozar debidamente de su propiedad. Sin embargo, no lo hizo así; y al no hacerlo estableció a favor del predio por él enajenado un derecho de servidumbre de luces y vistas, con todos los derechos necesarios para su uso, a tenor de lo dispuesto por el artículo 478 del Código Civil (1930). El demandado está obligado desde luego, a no hacer más gravosa la servidumbre. La demanda en este caso no se funda en que la servidumbre se haya hecho más gravosa para el predio sirviente, sino en una negación absoluta de la existencia de la servidumbre. Y la prueba, lejos de demostrar que las ventanas en la planta alta son más gravosas para el predio del demandante que si se abrieran en la planta baja, demuestra todo lo contrario, pues siendo la casa del demandante de una sola planta, por las ventanas de la planta alta del demandado sólo puede verse el techo de la casa vecina, mientras que por ventanas abiertas en la planta baja se tendrían vistas rectas hacia el interior de la casa del demandante, lo que sería mucho más gravoso para éste.

El demandado, como dueño del solar, tiene derecho a construir sobre él desde el suelo hasta el cielo y a proveer a las edificaciones de las ventanas que sean razonablemente necesarias para el goce y disfrute de las mismas. Y dadas las circunstancias especiales de este caso, debemos resolver también, para definir de una vez los derechos del demandante, que éste, como dueño del otro solar, tiene iguales derechos que el demandado, pues éste, al aceptar el traspaso de su propiedad con conocimiento de que en la pared de la casa vecina existían ventanas con vistas rectas sobre su predio, sin que hiciera protesta alguna o limitara en manera alguna el derecho de su vecino, aceptó y consintió que su vecino pudiera continuar gozando de su propiedad con los mismos derechos que el demandado adquirió para el goce de la suya. Somos de opinión que de acuerdo con la Equidad ésta es la

mejor y más justa solución que podemos dar a esta situación creada por los actos voluntarios de las partes litigantes.

*Por las razones expuestas debe modificarse la sentencia recurrida, dejándola sin efecto en cuanto ordena al demandado tapiar las cuatro ventanas abiertas en la planta alta de su casa; en cuanto condena al demandado al pago de costas, gastos y honorarios; y en cuanto autoriza al demandante a realizar, en caso que el demandado se negare a hacerlo, las obras necesarias para reducir el alero construído por el demandado. Y así modificada, se confirma la sentencia dictada por la Corte de Distrito de Aguadilla el día 16 de marzo de 1935, disponiéndose que bajo pena de desacato el demandado deberá realizar las obras necesarias para recortar el alero y reformarlo de acuerdo con las órdenes de la Corte. Todo sin especial condenación de costas.*

El Juez Asociado Señor Córdova Dávila no intervino.